
WMG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CR-61-1BO
NO. 4:19-CR-61-2BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| DAVON TERRELL HENDERSON | ) | |
| PAMELA DEWITT BABB | ) | |

The United States Attorney charges that:

I. BACKGROUND ON MEDICARE AND MEDICARE ADVANTAGE

1. The Medicare Program ("Medicare") is a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare is administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare are referred to as Medicare "beneficiaries." Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Medicare consists of various "parts" which regulate payment for various types of covered services and plans. Medicare Part C, or "Medicare Advantage" is a section of Medicare under which Medicare contracts with risk-based private health plans, whereby the private plans accept full responsibility or risk for the costs of their

1

enrollee's care in exchange for a prospective, monthly, per-enrollee payment. Under Medicare Advantage, enrollee beneficiaries continue to pay to Medicare their required premiums for physician services and prescription drugs. In return, they receive health insurance for all services through their Medicare Advantage plan. Medicare pays the Medicare Advantage private health plan a predetermined, monthly, risk-adjusted payment to cover each beneficiary's care.

3. Humana, Inc., doing business as Humana, is a Medicare Advantage plan that constitutes a health care benefit program under Title 18, United States Code, Section 24(b). As described above, Humana receives monthly disbursements from Medicare based upon aggregate risk factors for its beneficiary enrollees. The Medicare beneficiaries enrolled with Humana are referred to herein as the "Humana Beneficiaries." The Humana Beneficiaries have the ability to receive covered health care benefits, items, and services from medical providers who, in turn, file claims for payment with Humana. As such, Medicare ultimately funds the services rendered to the Humana Beneficiaries.

4. Among other services, Humana offers its beneficiaries certain benefits, items, and services relating to ambulance transportation. In the ordinary course of its business, upon receipt of a facially sufficient claim by an ambulance provider for services rendered to a Humana Beneficiary, Humana pays the ambulance provider for the services.

5. Humana does not authorize providers to bill Humana for ambulance

2

transportation services and incidental charges that are not, in fact, rendered to the Humana Beneficiaries.

## II. THE SCHEME TO DEFRAUD

### A. Scheme Background

6. Defendant DAVON TERRELL HENDERSON is an individual who resided and did business in Pitt County within the Eastern District of North Carolina. At all times material to this Criminal Information, HENDERSON owned and operated H&H Transport Services LLC (H&H), a business that provided wheelchair transportation services to the public.

7. Beginning in or around 2008, HENDERSON also began to work at Med 1 Inter-facility Care, LLC (hereinafter "Med-1"). By 2011, HENDERSON was a manager for Med-1, overseeing operations for both ambulance transportation, as well as dispatches for wheelchair services.

8. PAMELA DEWITT BABB worked at Med-1 with HENDERSON. BABB was experienced in billing Medicare and private insurance for ambulance transportation services.

9. Prior to the end of 2012, when Med-1 personnel rendered ambulance transportation services, the personnel rendering the services completed an Ambulance Call Report ("ACR"). The ACR was a form that documented, among other things, the date of the ambulance transportation, the patient name and identifiers, the condition of the patient during transport, as well as the pickup and

drop-off locations for the transport.

10. In the ordinary course of business prior to the end of 2012, Med-1 staff provided copies of ACR forms to BABB. BABB and others then used the ACRs to bill insurers for the ambulance transportation services reflected in the ACRs. BABB billed insurers for services rendered, both at Med-1's offices, and from home via a computer.

11. In 2012, Med-1 filed for bankruptcy. Med-1 also lost its franchises with various counties to be able to conduct ambulance transportation services.

B. Execution of the Scheme

12. Beginning in or around January of 2014, HENDERSON, BABB, and others entered into a scheme to defraud Humana's Medicare Advantage program by billing for fictitious ambulance services using the names and identifiers of Humana Beneficiaries.

13. To carry out the scheme, a participant in the scheme acquired personally identifying information (PII) for certain Humana Beneficiaries. HENDERSON and BABB paid participants for obtaining the identifying information of Humana Beneficiaries.

14. Using stolen Humana Beneficiary identifying information, HENDERSON and P.B. caused Humana's Medicare Advantage plan to be "back-billed" for various ambulance services in 2013, even though Med-1 was not operational for most of 2013. Thereafter, HENDERSON and BABB caused Humana

4

to be billed for further fictitious ambulance services, continuing the fraud through June of 2016.

15. During the course of the fraud, Humana initially issued paper checks to Med-1 for the fictitious services. Rather than depositing the checks, HENDERSON and BABB caused the checks to be converted to cash using a check cashing business. HENDERSON and BABB then split the cash proceeds from the fraud.

16. Eventually, BABB established an electronic billing and payment channel between Med-1 and Humana. Although BABB established this billing and payment channel in the name of Med-1, the routing number given to Humana for the purposes of payment for ambulance services belonged to H&H. In other words, payments from Humana for services allegedly rendered by Med-1 were deposited into an H&H bank account.

17. After Humana made an electronic deposit into the H&H bank account for fictitious ambulance services, HENDERSON and BABB split the proceeds by wiring approximately half of the proceeds into a bank account belonging to BABB.

18. In total, between 2014 and April of 2016, HENDERSON and BABB caused Humana to be billed for $6.1 Million in fraudulent ambulance services. Of this amount, Humana paid $4.7 Million, which was split between HENDERSON and BABB.

## COUNT ONE

19. Introductory Paragraphs 1 through 18 are realleged and incorporated

5

by reference into this Count.

### The Conspiracy

20. Beginning at a time unknown, but no later than January 31, 2014, and continuing through on or about June 21, 2016, within the Eastern District of North Carolina and elsewhere, the defendants DAVON TERRELL HENDERSON and PAMELA DEWITT BABB did knowingly combine, conspire, confederate, and agree with each other and others known to the United States Attorney, to commit offenses against the United States, to wit, to knowingly and willfully execute and attempt to execute a scheme and artifice to: (1) defraud a health care benefit programs, to wit, Medicare and Humana, and (2) obtain by means of materially false and fraudulent pretenses, representations, and promises, any of the money or property owned by, and under the custody or control of said health care benefit programs; in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

21. It was the purpose of the conspiracy for HENDERSON, BABB, and other conspirators, to benefit from unlawful use of the Humana Beneficiary names to bill Humana for fictitious health care services.

### Overt Acts

22. In furtherance of the conspiracy, and to effect the objects thereof, there were committed in the Eastern District of North Carolina various overt acts,

including, but not limited to the following:

a.) A member acquired personally identifying information for a Humana Beneficiary;

b.) A member of the conspiracy billed Humana for fictitious ambulance services using stolen identifying information for the Humana Beneficiaries;

c.) A member of the conspiracy received the fraudulent billing proceeds and split the proceeds of the fraud between the participants;

d.) A member of the conspiracy paid others for acquiring the stolen Humana Beneficiary identifying information;

e.) A member of the conspiracy established an electronic billing and payment channel between Humana and Med-1.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

23. Introductory Paragraphs 1 through 22 are realleged and incorporated by reference into this Count.

24. Between in or about January of 2014 and continuing to in or about June of 2016, in the Eastern District of North Carolina, the defendant, DAVON TERRELL HENDERSON and PAMELA DEWITT BABB, aiding and abetting each other and others, did knowingly transfer, possess, and use, without lawful authority, certain means of identification of other persons, to wit, names and Humana Beneficiary identification numbers, during and in relation to a felony violation enumerated in 18

7

Case 4:19-cr-00061-BO   Document 1   Filed 08/26/19   Page 7 of 9

U.S.C. § 1028A(c), to wit, Conspiracy to Commit Health Care Fraud, in violation of Title 18, United States Code, Section 1349, knowing that said means of identification belonged to other actual persons, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE NOTICE

Each named defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in Count One of the Information, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981 (a)(1)(C), the latter as made applicable by 28 U.S.C. § 2641(c), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

The forfeitable property includes, but is not limited to, the gross proceeds personally obtained by the defendants, as well as the following specific properties:

A. S US 13 Hwy Rear, Deed Date 12/20/2014, Wayne County, NC

B. 412 Corbett Hill Rd/Lt 2, Deed Date 11/18/2015, Wayne County, NC

C. 412 Corbett Hill Rd/Lt 1, Deed Date 11/18/2015, Wayne County, NC

D. 1356 S US 13 Hwy, Deed Date 12/29/2014, Wayne County, NC

E. 1186 Grantham School Rd, Deed Date 5/28/2014, Wayne County, NC

F. 200 W Tarheel Place, Lt 43, Hillandale #1, Deed Date 5/4/2011, Wayne

County, NC

G. 21 Tart Place, Deed Date 5/11/2015, LaGrange, Green County, NC.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant --

(1)   cannot be located upon the exercise of due diligence;

(2)   has been transferred or sold to, or deposited with, a third party;

(3)   has been placed beyond the jurisdiction of the court;

(4)   has been substantially diminished in value; or

(5)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

9